# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| OLURO OLUKAYODE, | ) | |
| individually and on behalf of all others | ) | Civil Action No. _____ |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | **COLLECTIVE AND CLASS** |
| v. | ) | **ACTION COMPLAINT** |
| | ) | |
| UNITEDHEALTH GROUP, | ) | |
| OPTUM, INC. and | ) | **JURY TRIAL DEMANDED** |
| THE ADVISORY BOARD COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Oluro Olukayode ("Olukayode" or "Plaintiff"), through his undersigned counsel, individually and on behalf of all others similarly situated, files this Collective and Class Action Complaint against Defendants UnitedHealth Group ("UnitedHealth"), Optum, Inc. ("Optum") and The Advisory Board Company ("ABC") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and Maine, New York, and Maryland state law. Plaintiff alleges that he and other similarly situated consultants were improperly classified as independent contractors, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since a number of the events giving rise to the Complaint occurred in this District. Specifically, Defendant UnitedHealth has its headquarters in Minnesota, in this judicial district.

## PARTIES

4.      Plaintiff Oluro Olukayode ("Olukayode') is an individual residing in Frisco, Texas. Olukayode worked for Defendants as a Consultant providing support and training in using a new recordkeeping system to Defendants' clients in Maine, New York, Massachusetts, Arizona and Maryland between April 2015 and April 2017. Pursuant to 29 U.S.C. § 216(b), Olukayode has consented in writing to participate in this action. *See* Exhibit A.

5.      Defendant UnitedHealth Group ("UnitedHealth") is a company providing various healthcare and well-being services. UnitedHealth is headquartered in Minnetonka, Minnesota.

6.      Defendant Optum, Inc. ("Optum") is a subdivision of UnitedHealth. Optum provides healthcare information services to hospitals and other healthcare facilities, helping these facilities implement new electronic recordkeeping systems.

7.    Defendant The Advisory Board Company ("ABC") also provides healthcare information services to healthcare and other client facilities across the United States.

8.    In 2017, Optum merged with ABC and assumed the business line at issue in this case.[1]

9.    Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

10.    Defendants' annual gross volume of sales made or business done exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

11.    Plaintiff brings Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following collective of potential FLSA opt-in litigants:

> All individuals who worked for any Defendants providing training and support to Defendants' clients in connection with the implementation of electronic recordkeeping systems in the United States from April 23, 2016 to the present and were classified as independent contractors ("FLSA Collective").

12.    Plaintiff brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All individuals who worked for any Defendants providing training and support to Defendants' clients in connection with the implementation of

---

[1] See "The Advisory Board Company Stockholders Approve Merger Agreement with Optum", Nov. 15, 2017, *available at* https://www.optum.com/about/news/the-advisory-board-company-stockholders-approve-merger-agreement-with-optum.html (last visited Feb. 19, 2019).

electronic recordkeeping systems in Maine from April 23, 2016 to the present and were classified as independent contractors ("Maine Class").

13.     Plaintiff brings Count III of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

All individuals who worked for any Defendants providing training and support to Defendants' clients in connection with the implementation of electronic recordkeeping systems in New York from April 23, 2013 to the present and were classified as independent contractors ("New York Class").

14.     Plaintiff brings Count IV of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

All individuals who worked for any Defendants providing training and support to Defendants' clients in connection with the implementation of electronic recordkeeping systems in Maryland from April 23, 2016 to the present and were classified as independent contractors ("Maryland Class").

15.     The FLSA Collective and the Maine, New York, and Maryland Class are together referred to as the "Classes."

16.     Plaintiff reserves the right to re-define the Classes prior to notice or class certification, and thereafter, as necessary.

## **FACTS**

17.     As leading healthcare information technology firms, Defendants provide training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems. Defendants employ consultants, such as Plaintiff, who perform such training and support services throughout the United States.

4

18.     Defendants' financial results are significantly driven by the number of consultants providing training and support services for Defendants' customers and the fees that Defendants charge the customers for these services.

19.     Between April 2015 and April 2018, Plaintiff Oluro worked as a consultant for Defendants in Maine, New York, Massachusetts, Arizona and Maryland.

20.     Plaintiff was paid solely on an hourly basis and was paid only for the time they billed to the end client.

21.     Plaintiff routinely worked in excess of 40 hours a week while performing work for Defendants. Plaintiff's project assignments frequently required him to work 12 hours a day, 7 days a week.

22.     Defendants improperly, wrongfully and illegally classified Plaintiff and Class Members as independent contractors, when the economic reality of their position is that of an employee, and Defendants retain the right of control, and, in fact, actually do control their work.

**Plaintiff and Class Members are Employees as a Matter of Economic Reality**

23.     Work performed by Plaintiff and Class Members is an integral part of Defendants' business. Defendants are in the business of providing information technology educational services to the healthcare industry. Plaintiff and Class Members provide support and training to Defendants' clients in connection with the implementation of electronic recordkeeping systems.

24.     Plaintiff's and Class Members' duties do not involve managerial work. They follow the training provided to them by Defendants in performing their work, which is basic training and support in using electronic recordkeeping systems.

25.     Plaintiff and Class Members do not make any significant relative investments in relation to their work with Defendants. Defendants provide the training and equipment required to perform the functions of their work.

26.     Plaintiff and the Class Members have little or no opportunity to experience a profit or loss related to their employment. Defendants pay Plaintiff and the Class Members at a fixed hourly rate. Plaintiff and the Class Members do not share in Defendants' monetary success; their income from their work is limited to their hourly rate.

27.     Plaintiff's and Class Members' work does not require special skills, judgment or initiative. Defendants provide training to Plaintiff and Class Members, which they use to provide training and support to Defendants' clients.

28.     Plaintiff and Class Members are economically dependent on Defendants. Plaintiff and Class Members are entirely dependent upon Defendants for their business, as they are not permitted to perform services for any other company during their time working for Defendants.

29.     Plaintiff and Class Members are not customarily engaged in an independently established trade, occupation, profession or business.

30.     Plaintiff and Class Members typically enter into successive projects for Defendants.

31.     Plaintiff and Class Members have little or no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

32.     Defendants instruct Plaintiff and Class Members concerning how to do their work and Defendants dictate the details of the performance of their jobs. For example:

      a.     Defendants, not Plaintiff or Class Members, conduct all of the billing and invoicing to Defendants' clients for the work. Defendants bill the third-party customers directly;

      b.     Plaintiff and Class Members have no control over what prices to charge, or the scheduling of shifts. All negotiations over the cost of the work are done directly between Defendants and the third-party client;

      c.     Defendants require Plaintiff and Class Members to work the entire project from inception to conclusion;

      d.     Defendants provide all training needed for Plaintiff and Class Members to perform their work; and

      e.     Defendants require Plaintiff and Class Members to perform in accordance with Defendants' policies, manuals, standard operating procedures and the third-party client's requirements.

33.     Plaintiff and Class Members often work approximately twelve (12) hours per day, seven (7) days per week during their project assignments for Defendants.

34.     Plaintiff and Class Members have to request Defendants' approval for time off. Defendants have the discretion to grant or deny such requests.

**Plaintiff and Class Members are not Exempt as "Computer Employees" under the FLSA**

35.     Plaintiff and Class Members provide support and training to hospital staff in connection with the implementation of new electronic recordkeeping systems. Plaintiff has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs. Plaintiff and Class Members do not work as, nor are they similarly skilled as, computer systems analysts, computer programmers or software engineers, as defined in 29 C.F.R. § 541.400(a).

36.     Plaintiff's and Class Members' primary duties consist of training and aiding healthcare staff with using new electronic recordkeeping software. This support is also known as "at the elbow". Plaintiff's and Class Members' primary duties do not include the higher skills of "application of systems analysis techniques and procedures" pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiff and Class Members do not analyze, consult or determine hardware, software programs or any system functional specifications for Defendants' clients. *See id.*

37.     Plaintiff and Class Members do not consult with Defendants' customers to determine or recommend hardware specifications. Plaintiff and Class Members do not design, develop, document, analyze, create, test or modify computer systems or programs as defined in 29 C.F.R. § 541.400(b)(2).

38.     Plaintiff and Class Members are not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E:

Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiff and Class Members provide support and training to Defendants' clients in using electronic recordkeeping systems.

**Plaintiffs and Class Members Routinely Worked in Excess of Forty Hours a Week**

39.     Plaintiff and Class Members' project assignments  frequently required them to work 12-hour shifts, 7 days a week, while performing work for Defendants.

40.     Although Plaintiff and Class Members are routinely required to work more than forty (40) hours per week, they do not receive one and one-half (1 ½) times their regular rate for hours worked in excess of forty (40) hours per week, as required by the FLSA and Maine, , New York, and Maryland state laws.

41.     Instead, Plaintiff and Class Members are paid a straight hourly rate for hours that they work, regardless of whether they work more than forty (40) hours in a week.

**Defendants Willfully Violated the FLSA**

42.     Defendants and their senior management had no reasonable basis to believe that Plaintiffs and the members of the FLSA Collective were exempt from the requirements of the FLSA. Rather, Defendants either knew or acted with reckless disregard of clearly applicable FLSA provisions in failing to pay overtime to Plaintiff and the FLSA Collective. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and/or failures to act, including the following:

a.     At all times relevant hereto, Defendants maintained payroll records which reflected the fact that Plaintiff and the FLSA Collective did, in fact, regularly work in excess of 40 hours per week, and thus,

9

Defendants had actual knowledge that Plaintiff and the FLSA Collective Members worked overtime;

b.    At all times relevant hereto, Defendants knew that they did not pay Plaintiff and the FLSA Collective Members one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

c.    As evidenced by their own job offer letters, independent contractor agreements, employment agreements, and training materials for consultants, at all times relevant hereto, Defendants were aware of the nature of the work performed by their consultants, and, in particular, that these individuals worked exclusively at-the-elbow of healthcare workers employed by Defendants' clients, providing basic training and support;

d.    As evidenced by its own job offer letters, employment agreements, and training materials for consultants, Defendants knew and understood that they were subject to the wage requirements of the FLSA as "employers" under 29 U.S.C. § 203(d).

e.    At all times relevant hereto, Defendants were aware that their consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1);

or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f.    Defendants lacked any reasonable or good faith basis to believe that their consultants fell within any exemption from the overtime requirements of the FLSA. Rather, Defendants deliberately misclassified their consultants as independent contractors in order to avoid paying them overtime compensation to which they were entitled;

g.    At all times relevant hereto, Defendants were aware that they would (and, in fact did) benefit financially by failing to pay Plaintiff and the FLSA Collective Members one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h.    Thus, Defendants had (and have) a strong financial motive to violate the requirements of the FLSA by misclassifying their consultants as independent contractors.

43. Based upon the foregoing, Defendants were cognizant that, or recklessly disregarded whether, their conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

44. Plaintiff brings Count I this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the class defined above.

45.     Plaintiff desires to pursue his FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

46.     Plaintiff and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

47.     Specifically, Defendants misclassified Plaintiff and FLSA Collective Members as independent contractors and paid them a set hourly rate, regardless of the number of hours they worked.

48.     The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

49.     Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## MAINE CLASS ACTION ALLEGATIONS

50.     Plaintiff brings Count II of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Maine Class defined above.

51.     The members of the Maine Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Maine Class.

52.     Plaintiff will fairly and adequately represent and protect the interests of the Maine Class because there is no conflict between the claims of Plaintiff and those of the Maine Class, and Plaintiff's claims are typical of the claims of the Maine Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

53.     There are questions of law and fact common to the proposed Maine Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Maine law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

54.     Plaintiff's claims are typical of the claims of the Maine Class Members in the following ways, without limitation: (a) Plaintiff Olukayode is a member of the Maine Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Maine Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Maine Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Maine

Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Maine Class Members.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Maine Class predominate over any questions affecting only individual Class Members.

56.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Maine Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Maine Class would create the risk of inconsistent or varying adjudications with respect to individual Maine Class Members that would establish incompatible standards of conduct for Defendants.

57.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Maine Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

58.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Maine Class. Plaintiff

Olukayode envisions no difficulty in the management of this action as a class action.

## NEW YORK CLASS ACTION ALLEGATIONS

59.     Plaintiff brings Count III of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the New York Class defined above.

60.     The members of the New York Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the New York Class.

61.     Plaintiff will fairly and adequately represent and protect the interests of the New York Class because there is no conflict between the claims of Plaintiff and those of the New York Class, and Plaintiff's claims are typical of the claims of the New York Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

62.     There are questions of law and fact common to the proposed New York Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate New York law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

63.     Plaintiff's claims are typical of the claims of the New York Class Members in the following ways, without limitation: (a) Plaintiff is a member of the New York Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New York Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the New York Class and involve similar factual

15

circumstances; (d) there are no conflicts between the interests of Plaintiff and the New York Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the New York Class Members.

64.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual Class Members.

65.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New York Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual New York Class Members that would establish incompatible standards of conduct for Defendants.

66.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New York Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

67.    Without a class action, Defendants will retain the benefit of their

wrongdoing, which will result in further damages to Plaintiffs and the New York Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## MARYLAND CLASS ACTION ALLEGATIONS

68.     Plaintiff brings Count IV of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Maryland Class defined above.

69.     The members of the Maryland Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Maryland Class.

70.     Plaintiff will fairly and adequately represent and protect the interests of the Maryland Class because there is no conflict between the claims of Plaintiff and those of the Maryland Class, and Plaintiff's claims are typical of the claims of the Maryland Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

71.     There are questions of law and fact common to the proposed Maryland Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Maryland law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

72.     Plaintiff's claims are typical of the claims of the Maryland Class Members in the following ways, without limitation: (a) Plaintiff is a member of the Maryland Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Maryland Class; (c) Plaintiff's claims are based on the

same legal and remedial theories as those of the Maryland Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Maryland Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Maryland Class Members.

73.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Maryland Class predominate over any questions affecting only individual Class Members.

74.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Maryland Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Maryland Class would create the risk of inconsistent or varying adjudications with respect to individual Maryland Class Members that would establish incompatible standards of conduct for Defendants.

75.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Maryland Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

76.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Maryland Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiff and the FLSA Collective Members)

77.     All previous paragraphs are incorporated as though fully set forth herein.

78.     The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d).

79.     Defendants are subject to the wage requirements of the FLSA because Defendants are employers under 29 U.S.C. § 203(d).

80.     During all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

81.     During all relevant times, Plaintiff and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

82.     Plaintiff and the FLSA Collective Members are not exempt from the requirements of the FLSA.

83.     Plaintiff and the FLSA Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

84.     Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the FLSA Collective Members for all their overtime hours worked by misclassifying Plaintiff and the FLSA Collective Members as independent contractors, thereby exempting them from the requirements of the FLSA.

85.     Defendants knowingly failed to compensate Plaintiff and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

86.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

87.     In violating the FLSA, on information and belief, Defendants did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
### Violation of 26 M.R.S.A § 664
### (Brought on Behalf of Plaintiff and the Maine Class)

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     During all relevant times, Defendants were employers within the meaning of 26 M.R.S.A § 663.

90.     During all relevant times, Plaintiff and the Maine Class Members were covered employees within the meaning of 26 M.R.S.A § 663.

91.     Under 26 M.R.S.A § 664, an employee who works in excess of 40 hours a week must receive time and a half for the hours worked in excess of 40.

92.     26 M.R.S.A § 664 does not contain an exemption for computer employees.

93.     Pursuant to 26 M.R.S.A § 670, Defendants are liable to Plaintiff and the Maine Class Members for unpaid overtime wages, liquidated damages, attorneys' fees and costs.

## COUNT III
## Violation of the New York Minimum Wage Act
## (Brought on Behalf of Plaintiff and the New York Class)

94.     All previous paragraphs are incorporated as though fully set forth herein.

95.     Overtime compensation due to New York workers is governed by New York Labor Law ("NYLL"), N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

96.     NYLL requires that non-resident employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

97.     NYLL requires that resident employees be compensated for all hours worked in excess of forty-four (44) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

98.     Defendants are subject to the wage requirements of the NYLL because Defendants are "employers" under N.Y. LAB. LAW § 651(6).

99.     During all relevant times, Plaintiff and the New York Class were covered employees entitled to the above-described NYLL's protections. *See* N.Y. LAB. LAW § 651(5) and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.14.

100.    Plaintiff and the New York Class are not exempt from the requirements of the NYLL.

101.    Defendants are required by NYLL to pay Plaintiff and the New York Class time and one-half (1 ½) the regular rate of pay for any work in excess of forty (40) hours for non-residents and forty-four (44) hours for residents pursuant to N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

102.    Defendants violated Plaintiff's and the New York Class Members' rights by failing to pay them the legally required amount of overtime compensation at rates not less than one and one-half (1 ½) times the regular rate of pay their regular rate of pay to which they are entitled under N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

103.    Specifically, Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the New York Class for all their overtime hours worked by misclassifying Plaintiff and the New York Class as independent contractors exempt from the requirements of the NYLL.

104.    In violating the NYLL, Defendants acted willfully and with reckless disregard of clearly applicable NYLL provisions.

**COUNT IV**
**Violation of Maryland Wage and Hour Law and Wage Payment and Collection Law**
**(Brought on Behalf of Plaintiff and the Maryland Class)**

105.    All previous paragraphs are incorporated as though fully set forth herein.

106.    The Maryland Wage and Hour Law ("MWHL") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at

a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* Maryland Code, Labor and Employment Article ("LE") §§ 3-415 and 3-420.

107.    Defendants are subject to the overtime requirements of the MWHL because Defendants are employers under LE § 3-401.

108.    During all relevant times, Plaintiff and the Maryland Class members were covered employees entitled to the above-described MWHL's protections. *See* LE § 3-401.

109.    The Maryland Wage and Hour Law does not contain an exemption from overtime pay for any type of computer employees. LE § 3-415.

110.    Defendants failed to compensate Plaintiff and the Maryland Class members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of LE §§ 3-415 and 3-420.

111.    Defendants' failure and refusal to pay wages due as required by Maryland law was willful and intentional, was not the result of any bona fide dispute between Plaintiff and Maryland Class Members and Defendants, and was not in good faith. As a consequence, Plaintiff and Maryland Class Members are entitled to recover, in addition to their wages, up to two (2) times the amount of the wages claimed as liquidated damages pursuant to L&E § 3-507.1, as well as reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff seeks the following relief on behalf of themselves and the Classes:

a.   An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b);

b.   Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c.   An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Maine Class;

d.   An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the New York Class;

e.   An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Maryland Class;

f.   Back pay damages for unpaid overtime compensation and prejudgment interest to the fullest extent permitted under the law;

g.   Liquidated, punitive, and/or exemplary damages to the fullest extent permitted under the law;

h.   Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

i.   Such other and further relief as this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury for all issues of fact.

Dated: April 23, 2019                    Respectfully submitted,

                                         <u>s/Adam W. Hansen</u>
                                         Adam Hansen
                                         MN Bar No. 0391704

APOLLO LAW LLC
3217 Hennepin Avenue South
Suite 7
Minneapolis, MN 55408
Telephone: (612) 927-2969
Fax: (419) 793-1804
adam@apollo-law.com

Harold Lichten*
Olena Savytska*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Fax: (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

David M. Blanchard*
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com

*Attorneys for Plaintiff
and the Proposed Classes*

\* *Pro Hac Vice* anticipated.